**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **LEONARD ROBERTS, II,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:19-00651** |
| | ) | **(Criminal No. 2:18-0004)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Supplemental Section 2255 Motion.[1] (Document Nos. 193 and 216.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 195.)

**FACTUAL AND PROCEDURAL BACKGROUND**

1.     **Criminal Action No. 2:18-0004:**

On January 17, 2018, Movant, and several co-defendants, were charged in a seven-count Indictment. (Criminal Action No. 2:18-0004, Document No. 1.) Specifically, Movant was charged with one count of Conspiring to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine in violation of 21 U.S.C. § 846 (Count One); one count of Aiding and Abetting the Attempted Possession with Intent to Distribute 500

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count Two); two counts of Distribution of 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Counts Three and Five); one count of Aiding and Abetting the Distribution of 50 Grams or more of a Mixture or Substance Containing a Detectable Amount Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Four); one count of Being Aided and Abetted in the Distribution of Five Grams or More of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Six); and one count of Being Aided and Abetted in the Possession with Intent to Distribute 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Seven). (Criminal Action No. 2:18-0004, Document No. 1.) On January 29, 2018, Attorney Gary Collias was appointed to represent Movant. (Id., Document No. 45.) On April 11, 2018, Movant pled guilty to Count One of the Indictment (Conspiring to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine in violation of 21 U.S.C. § 846). (Id., Document Nos. 98, 101, 102.) A Presentence Investigation Report was prepared. (Id., Document No. 175.) The District Court determined that Movant had a Base Offense Level of 36, and a Total Offense Level of 40, the Court having applied the following: (1) A two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) because a firearm was possessed; (2) A two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) because Movant maintained a premises for the purpose of manufacturing, distributing, or storing a controlled substance; (3) A three-level enhancement pursuant to U.S.S.G. § 3B1.1(a) because Movant was an organizer or leader of a criminal activity involving five or more

participants; and (4) a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).[2] (<u>Id.</u>, Document No. 165 and 167.) The District Court sentenced Movant on April 8, 2019, to serve a 216-month term of imprisonment, to be followed by a five-year term of supervised release. (<u>Id.</u>, Document Nos. 163 and 165.) The District Court also imposed a $100 special assessment. (<u>Id.</u>)

**B.      Section 2255 Motion:**

On September 9, 2019, Movant, acting *pro se*, filed his instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil No. 2:19-00651, Document No. 193.) As grounds for *habeas* relief, Movant alleges the following: (1) Trial counsel was ineffective in his failure to file a notice of appeal (<u>Id.</u>, pp. 5 – 6.); and (2) Movant's conviction is invalid because "of a lack of a conspiracy" (<u>Id.</u>, pp. 7 – 8.) By Order entered on September 13, 2019, the undersigned directed trial counsel, Attorney Collias, to file an affidavit responding to Movant's claim of ineffective assistance of counsel and the United States to file its Answer. (<u>Id.</u>, Document No. 198.) On September 24, 2019, Attorney Collias filed his Affidavit addressing Movant's claim of ineffective assistance of counsel. (<u>Id.</u>, Document No. 202.) On November 14, 2019, Movant filed his letter-form Motion to Supplement his Section 2255 Motion. (<u>Id.</u>, Document No. 206.) By Order entered on November 15, 2019, the undersigned granted Movant's letter-form Motion and directed that Movant file his Supplement by January 3, 2020, Attorney Collias file any supplement to his Affidavit by February 3, 2020, and the United States to file its Answer to Movant's original Section 2255 Motion and Supplement by March 17, 2020.

---

[2] The District Court varied downward substantially from the lowest end of the Movant's advisory Guideline range. (Criminal Action No. 2:18-00004, Document Nos. 165 and 167.) Movant advisory Guideline range was 360 months to Life imprisonment. (*Id.*)

(<u>Id.</u>, Document No. 207.)

On January 1, 2020, Movant filed his Supplemental Section 2255 Motion. (<u>Id.</u>, Document No. 216.) As grounds for *habeas* relief, Movant alleges the following: (1) "Governmental misconduct by fraudulent inducement of a crime, and <u>Strickland</u> claim" (<u>Id.</u>, pp. 10 – 16.); (2) "Plain error in plea colloquy by Honorable Judge Goodwin, and <u>Strickland</u> violation" (<u>Id.</u>, pp. 17 – 24.); (3) "Abuse of discretion of Honorable Judge Goodwin, and <u>Strickland</u> claim" (<u>Id.</u>, pp. 25 – 34.); and (4) "Plain error in sentencing by Honorable Judge Goodwin, and <u>Strickland</u> violation" (<u>Id.</u>, pp. 35 – 37.). On January 8, 2020, Attorney Collias filed his Supplemental Affidavit. (<u>Id.</u>, Document No. 217.) On March 17, 2020, the United States filed its Response in Opposition to Movant's Section 2255 Motions. (<u>Id.</u>, Document No. 228.) On May 28, 2020, Movant filed his Reply. (<u>Id.</u>, Document No. 236.) In his Reply, Movant complains that he does not have a copy of the Plea Hearing and Sentencing Hearing transcripts. (<u>Id.</u>) By Order entered on March 30, 2022, the undersigned directed the United States to provide Movant with a copy of the Plea Hearing and Sentencing Hearing transcripts by April 8, 2022, and that Movant file any Supplemental Reply by April 29, 2022. (<u>Id.</u>, Document No. 266.) Movant, however, has failed to file a Supplemental Reply.

## **DISCUSSION**

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To

4

succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

1.    **Appellate Waiver:**

In his Section 2255 Motions, Movant challenges the validity of his conviction arguing that the "Government adduced insufficient evidence to support the conspiracy conviction." (Document No. 193, pp. 7 - 8.) Movant claims the United States established only "a series of spot transactions" and "[t]hese transactions support a buyer-seller arrangement, but not a conspiracy to distribute methamphetamine."[3] (Id.) Movant also challenges his sentence arguing that the District Court

---

[3] As part of his Plea Agreement, Movant stipulated and agreed to facts contained in the "Stipulation of Facts." (Criminal Action No. 2:18-cr-0004, Document No. 102, pp. 10 – 11.) Movant further admitted to the factual basis in his Rule 11 colloquy. (Id., Document No. 223, pp. 13 – 14.) Specifically, the following colloquy occurred between the District Court and Movant:

| | |
|---|---|
| THE COURT: | Considering that explanation and those definitions, do you consider yourself guilty of violation 21 United States Code 846 as alleged in Count One of the indictment? |
| THE DEFENDANT | Yes. |
| THE COURT: | Tell me in your own words what you did that makes you think you're guilty. |
| THE DEFENDANT: | Well, Your Honor, I - - I was part of a conspiracy to bring methamphetamines to - - to West Virginia to distribute, mainly to feed me - - my addiction to methamphetamines I have personally with it, but I was part of a conspiracy with a - - with a few others that I'm guilty of. |
| THE COURT: | And what was the - - was it more than 500 grams of methamphetamine? |
| THE DEFENDANT: | Yes, I'm sorry, it was more than 500 grams of methamphetamine that was distributed. |

abused its discretion by imposing a two-level "drug house" enhancement pursuant to U.S.S.G. § 2D1.1(b)(2) and "maliciously" calculated the attributable drug weight different from the parties' stipulation. (Id., Document No. 216, pp. 25 – 35.) Concerning the "drug house" enhancement, Movant argues that the District Court "failed to allow evidence that was exculpatory" and "then punished the [Movant] for running a drug house without proof." (Id., p. 25.) Concerning the drug weight, Movant complains that the District Court "ignored the Government and [Movant's] agreement that stipulated the 9/21/2017 drug weight as 118 grams [and] used known false fact of drug weight to achieve extra judicial punishment because the facts were known to be false when misused to violate [Movant's] rights to a fair hearing." (Id., p. 30.)

In Response, the United States argues that Movant's above claims are without merit. (Id., Document No. 228, pp. 18 - 26.) First, the United States argues that it provided sufficient evidence to support a factual basis for the offense of conviction and Movant admitted to a sufficient factual basis in his Rule 11 colloquy." (Id., pp. 18 – 20.) Next, the United States argues that the District Court "did not abuse its discretion because [Movant] failed to overcome the presumption of reasonableness for his below-Guideline sentence." (Id., pp. 20 – 26.) Therefore, the United States argues that the above claims should be denied. (Id.)

In Reply, Movant argues that the District Court erred by applying an "essentially true" standard that "allowed the false facts that should have been confronted by Rule 11 to be lost and remain hidden." (Id., Document No. 236, pp. 16 – 18.) Movant claims this was a "wishy washy standard of review." (Id.) Movant argues that the "factual basis to which the Government presented

_____

(Id.) The District Court further requested that the United States proffer what it would be able to prove at trial, and the United States provided a detailed statement of the investigation, how the conspiracy operated, and how Movant was involved. (Id., pp. 14 – 17.) The undersigned, therefore, finds that there was an adequate factual basis to support Movant's conviction of violating 21 U.S.C. § 846.

6

is inaccurate and missing key facts." (Id.) Next, Movant argues that the District Court "knowingly ignored the facts and used its authority to add more time for a drug house that was known not to be." (Id., pp 21 – 22.) Finally, Movant continues to complain that the District Court ignored "the Government's weights and measurement and chose a weight and measure that allowed for an extra 4 years in prison." (Id.)

In his written Plea Agreement, Movant agreed to waive his right to appeal his conviction and sentence directly, with one exception. (Criminal No. 2:18-0004, Document No. 102, pp. 6 - 7.) Under the Plea Agreement, Movant waived his right to appeal his conviction and sentence of imprisonment as long as his sentence was "below or within the Sentencing Guideline range corresponding to offense level 36."[4] (Id.) Movant, however, agreed to waive his right to challenge under Section 2255 his guilty plea, his conviction resulting from the Plea Agreement, and any sentence imposed for the conviction, except on grounds of ineffective assistance of counsel. (Id.) It is well established that a defendant may waive his right to appeal or collaterally attack his conviction and sentence if the waiver was entered into knowingly and voluntarily. See United States v. Johnson, 410 F.3d 137 (4th Cir. 2005); United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). "To determine whether a waiver is knowing and intelligent, this court examines 'the totality of the circumstances, including the experience and conduct of the accused, as well as the accused's educational background and familiarity with the terms of the plea agreement.'" United States v. Johnson, 480 Fed.Appx. 229, 230 (4th Cir. 2012)(citation omitted). Generally, the waiver is valid and enforceable if a Court fully questions a defendant regarding the waiver of his right to appeal during the Rule 11 colloquy. Id.

---

[4]  The Guideline range for Offense Level 36 was 235 – 293 months of imprisonment. Although the District Court determined that Movant's Total Offense Level was 40, Movant's sentence of 216 months imprisonment was clearly below the Guideline range for Offense Level 36.

The Rule 11 colloquy is designed to ensure that a guilty plea is both intelligent and voluntary. See United States v. Vonn, 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). "Prior to accepting a guilty plea, a trial court, through colloquy with the defendant, must inform the defendant of, and determine that he understands, the nature of the charge(s) to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty and various rights." United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea." See Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973); Manley v. United States, 588 F.2d 79, 81 (4th Cir. 1978). A defendant's statement that his plea is voluntary and knowingly is generally considered conclusive on the issue. Savino v. Murrary, 82 F.3d 593, 603 (4th Cir. 1996); also see Fields v. Attorney General of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992)("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."), cert. denied, 506 U.S. 885, 113 S.Ct. 243, 121 L.Ed.2d. 176 (1992); DeFusco, 949 F.2d at 119 (A defendant's statements at the plea hearing are strong evidence of the voluntariness of the plea agreement), cert. denied, 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d. 412 (1992). The Fourth Circuit has recognized that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated - 'permit[ting] quick disposition of baseless collateral attacks." United States v. LeMaster, 403 F.3d 216, 220 (4th Cir. 2005).

The undersigned finds that Movant's Plea Agreement and appellate waiver were voluntary

and intelligent. There is no indication that Movant's Plea Agreement was made unknowingly or unintelligently. Movant initialed each page and signed the last page of the Plea Agreement, thereby confirming that he had read and discussed every part of the agreement with counsel and voluntarily agreed to the terms. (Criminal Action No. 2:18-0004, Document No. 102.) A review of the Plea Agreement further reveals that the waiver was clear and unambiguous. Specifically, the Plea Agreement stated, in pertinent part, as follows:

> Mr. Roberts knowingly and voluntarily waives the right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment, fine, or term of supervised release is below or within the Sentencing Guideline range corresponding to offense level 36. Mr. Roberts also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statute of conviction, 21 U.S.C. § 846, is unconstitutional, and (2) Mr. Roberts' conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit A) does not fall within the scope of 21 U.S.C. § 846.

> The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is within or above the Sentencing Guideline range corresponding to offense level 39.

> Mr. Roberts also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

> The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(Id., pp. 6 - 7.) The undersigned finds no indication that Movant did not understand the terms and consequences of signing the Plea Agreement. Considering Movant's educational background, the record reveals that Movant completed the tenth grade and although he never attempted to obtain his G.E.D., Movant indicated that he should have no difficulty in passing the G.E.D. exam. (Id.,

Document No. 175, p. 57 and Document No. 223, p. 3.) Additionally, Movant's criminal history

reveals that he is experienced with the criminal justice system. (<u>Id.</u>, Document No. 175, pp. 51 -

54.) During the Plea Hearing, the terms of the Plea Agreement were thoroughly reviewed with

Movant and he acknowledged that he understood the terms and consequences of signing the Plea

Agreement. (<u>Id.</u>, Document No. 223, 5 - 10.) Specifically, the following colloquy occurred

between the District Court and Movant:

> THE COURT: Mr. Roberts, do you understand what this plea agreement does and what it requires of you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions about it?
>
> THE DEFENDANT: No.
>
> THE COURT: Were each of the paragraphs of the plea agreement discussed with you prior to reaching the agreement with the government?
>
> THE DEFENDANT: Yes, they were.
>
> THE COURT: Are those, in fact, your initials on the first eight pages of the plea agreement, your signature at the bottom of page 9 and the stipulation of facts?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand you've entered into a stipulation of facts, which I just referred to, that may be used as evidence against you were you to breach the plea agreement and go to trial should I accept your agreement? Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that you've waived any right under Rule 410 of the Rules of Evidence to object to the use of the stipulations?
>
> THE DEFENDANT: Yes.

THE COURT:          Do you want me to accept the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

(Id., pp. 9 - 10.) The District Court then discussed in detail with Movant the nature of the charges,

the consequences of pleading guilty, and the constitutional and legal rights Movant was giving up

by pleading guilty. (Id., pp. 11 - 31.) The District Court specifically discussed the appeal waiver

with Movant. (Id., p. 7, 23 - 24.) The following colloquy occurred between the District Court and

Movant:

THE COURT:          Do you understand you may have a right to appeal your
                    conviction if you believe your guilty plea here today was
                    somehow involuntary or unconstitutional or there was some
                    fundamental defect that wasn't waived by your guilty plea
                    or your plea agreement, which I've accepted?

THE DEFENDANT: Yes.

THE COURT:          Do you understand that you or the government may have a
                    right to appeal any sentence that I impose?

THE DEFENDANT: Yes.

THE COURT:          I'll remind you that under your plea agreement, you agreed
                    to give up your right to appeal under most circumstances.

THE DEFENDANT: Yes.

THE COURT:          Do you understand that you've given up your right to appeal
                    a term of imprisonment as long as the sentence of
                    imprisonment is within or below offense level 36 and the
                    fine is as well?

THE DEFENDANT: Yes.

THE COURT:          Do you understand that you've waived your right to
                    challenge your guilty plea, conviction or sentence by what
                    we call collateral attack, that means a habeas corpus or any
                    kind of motion?

11

THE DEFENDANT:  Yes.

(Id.) The District Court inquired of Movant concerning the voluntariness of his guilty plea and Movant confirmed he was pleading guilty on his own free will. (Id., pp. 27 – 28.) After reviewing the foregoing, the District Court again advised Movant that he had the right to plead not guilty, and Movant confirmed that he wished to plead guilty. (Id., p. 30 - 31.) Based on the foregoing, the undersigned finds that Movant's appellate waiver is valid as it was entered into knowingly, intelligently, and voluntarily.

Although appellate waivers are valid, the Fourth Circuit has refused to enforce valid appellate waivers in a narrow class of claims. United States v. Jones, 538 Fed.Appx. 285, 287 (4th Cir. 2013). Specifically, the Fourth Circuit has refused to enforce valid appellate waivers in following narrow class of claims: (1) A defendant's challenge to "a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race" (See United States v. Martin, 961 F.2d 493 (4th Cir. 1992)); (2) A defendant's challenge to a "sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel (See United States v. Attar, 38 F.3d. 727 (4th Cir. 1994); United States v. Johnson, 410 F.3d 137 (4th Cir. 2005)); and (3) The enforcement of the valid waiver would result in a miscarriage of justice (See Johnson, 410 F.3d at 151)). It is well recognized, however, that alleged errors in a district court's calculation of a petitioner's Guidelines range does not result in a sufficient miscarriage of justice unless the error causes the court to impose a sentence exceeding the statutory maximum. United States v. Foote, 784 F.3d 931, 939 (4th Cir. 2015); United States v. Pregent, 190 F.3d 279, 284 (4th Cir. 1999). In Foote, the Fourth Circuit considered whether a petitioner's *habeas* challenge to his sentence, which was based on a subsequently nullified career offender designation, was a fundamental defect that inherently results

in a miscarriage of justice. <u>Foote</u>, 784 F.3d at 932. The Fourth Circuit explained that it declined to "declare that a fundamental defect or a complete miscarriage of justice has occurred in a situation in which [a petitioner] was (and on remand, would again be) sentenced under an advisory Guidelines scheme requiring individualized analysis of the sentencing factors set forth in 18 U.S.C. § 3553(a)." <u>Id.</u> at 941(emphasis in original). In the instant case, Movant was sentenced under the advisory Guidelines and his sentence (216 months) clearly did not exceed the statutory maximum (Life). In the instant case, Movant attempts to challenge his sentence by arguing that the District Court abused its discretion by imposing a two-level "drug house" enhancement and "maliciously" calculating the attributable drug weight different from the parties' stipulation. The undersigned, therefore, finds that the error in calculating Movant's advisory Guideline range does not constitute a miscarriage of justice overcoming Movant's valid appellate waiver. <u>See</u> <u>Jones</u>, 538 Fed.Appx. at 287(finding no miscarriage of justice sufficient to overcome the appellate waiver where defendant argued the district court erred in calculating his Guideline range by including his uncounseled state court conviction in his criminal history score); <u>also see</u> <u>United States v.</u> <u>Thornsbury</u>, 670 F.3d 532, 538-39 (4th Cir. 2012)(Errors in computing a defendant's sentence does not render a sentence "illegal" or an appellate waiver unlawful. In entering into a plea agreement containing an appellate waiver, the petitioner assumed "the risk of unforeseen legal errors involving his sentence, and in exchange, he received increased certainly regarding the length of that sentence."); <u>Sotirion v. United States</u>, 617 F.3d 27, 36 (1st Cir. 2010)(Recognizing that the miscarriage of justice exception is meant for only "egregious cases" and should be applied "sparingly and without undue generosity." Finding that examples of miscarriage of justice include claims where a defendant's sentence exceeded the maximum statutory penalty or violated a material term of the plea agreement – not "garden-variety" claims of error. A miscalculation of the

advisory guidelines range is precisely the kind of "garden-variety" claim of error contemplated by the appellate waiver.); United States v. Andis, 333 F.3d 886, 892 (8th Cir. 2003)(finding that the miscarriage of justice exception is "extremely narrow" and noting that "an allegation that the sentencing judge misapplied the Sentencing Guidelines . . . is not subject to appeal in the face of a valid appeal waiver."); Baxter v. United States, 2018 WL 3764092, * 3 (W.D.N.C. Aug. 7, 2018)(finding that petitioner's sentence did not exceed the statutory maximum and an miscalculation of petitioner's criminal history does not give rise to a constitutional issue). The undersigned, therefore, fines that Movant waived his right to challenge the alleged errors in the calculating of his advisory Guideline range. Accordingly, the undersigned respectfully recommends that the District Court determine that Movant's above *habeas* claims are precluded by his appellate waiver.

To the extent Movant concludes that his Plea Agreement and appellate waiver were invalid due to ineffective assistance of counsel, the undersigned finds his claim to be without merit. Although Movant concludes that Attorney Collias was ineffective in failing to "talk to the AUSA about a better Plea Agreement" and disregarding Movant's desire "to go to trial," Movant completely fails to set forth any factual basis supporting his above conclusions. (Civil Action No. 2:19-00651, Document No. 193, p. 2.) The record further contradicts Movant's claim that he was dissatisfied with the representation by counsel. During the Plea Hearing, Movant acknowledged that he was completely satisfied with his counsel's representation. (Criminal Action No. 2:18-0004, Document No. 223, p. 4.) Specifically, the following colloquy occurred between the District Court and Movant:

THE COURT:             Mr. Roberts, I find you're competent and capable of
                       entering an informed plea. Do you believe you've
                       had adequate time to discuss your case with your

14

| | lawyer? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Has he been able to answer your questions about how best to proceed in this matter? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Are you completely satisfied with the legal advice he's given you? |
| THE DEFENDANT: | Yes. |

(Id.) As stated above, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221 - 222. Movant has failed to show extraordinary circumstances. Accordingly, the undersigned finds that Movant's appellate waiver is valid and enforceable.

**2.      Breach of Plea Agreement:**

Next, Movant challenges the cooperation provision contained in the Plea Agreement. (Civil Action No. 2:19-00651, Document No. 216, pp. 19 - 22.) Movant first complains that the District Court did not give him "proper notice" of the "adverse effects that come with 'prison life'" when a contract to cooperate is recognized by the prison population." (Id., p. 19.) Movant argues that he unknowingly entered into the cooperation provision and is "forever known as a cooperator or a snitch." (Id.) Movant further complains that he did not benefit from the cooperation provision. (Id.) Movant explains that "[b]y contract and agreement of the Plea Deal, [Movant] is a Substantial Assistance Cooperator that has been denied the benefits of such acts as provided by U.S.S.G. 5K1.1, which provides a reduction for substantial assistance." (Id., p. 20.) Movant complains that

15

he was denied the "benefit" of his Plea Agreement because he did not receive a U.S.S.G. 5K1.1 reduction. (Id., p. 22.)

In Response, the United States argues that the above claim is without merit. (Id., Document No. 228, pp. 25 – 26.) The United States explains that although Movant argues that he should have been considered a "Substantial Assistance Cooperator," the District Court had "already departed substantially from the guidelines." (Id.) To the extent Movant claims that the District Court should have advised him of the risks of such cooperation in "prison life," the United States argues that Movant's "current dissatisfaction with his reputation among the prison population because the cooperation provision he knowingly signed does not constitute plain error by the Court." (Id.)

In Reply, Movant continues to argue that the District Court "should have put the Defendant on notice, and/or account for the cooperation to which he agreed to." (Id., Document No. 236, p. 20.)

The undersigned finds that Movant's above claim is without merit. Movant contends that the United States breached the Plea Agreement because Movant did not receive the "benefit" of his cooperation provision. Specifically, Movant complains that the United States failed to request a downward departure pursuant to U.S.S.G. § 5K1.1. Although Movant's Plea Agreement contained a "Cooperation" provision, there was no agreement by the United States to request a downward departure pursuant to U.S.S.G. § 5K1.1. The Plea Agreement contained a "Cooperation" provision providing as follows:

> Mr. Robert will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request by the United States. In complying with this provision, Mr. Roberts may have counsel present except when appearing before a grand jury.

(Criminal Action No. 2:18-0004, Document No. 102, p. 4.) During the Plea Hearing, the

"Cooperation" provision was explained to Movant by the District Court. (<u>Id.</u>, Document No. 223, pp. 6 – 8.) Movant confirmed that he understood the provision and what it required of him. (<u>Id.</u>) The undersigned notes that the Plea Agreement did contain an "Agreement on Sentencing Guidelines" provision, but such did not include a downward departure pursuant to U.S.S.G. § 5K1.1. (<u>Id.</u>, Document No. 102, p. 5.) Additionally, the Plea Agreement clearly stated that (1) the parties acknowledged and understood that the Court and the Probation Office were not bound by the parties' calculation of the Guidelines, (2) the matter of sentencing was "within the sole discretion of the Court," and (3) the United States made no representations or promises as to a specific sentence. (<u>Id.</u>, pp. 6 – 7.) The foregoing was thoroughly explained to Movant by the District Court during the Plea Hearing. (<u>Id.</u>, Document No. 223, pp. 6 – 8, 22.) The following colloquy occurred between the District Court and Movant:

> THE COURT: Do you understand that the sentence I impose may be different from any estimate that your lawyer or anybody else has given you and I may impose a sentence which is greater than or less than that called for by the guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: In paragraph 10 of your plea agreement, which we talked about earlier, do you agree with the government that the base offense level under the guidelines is 34, that a three-level enhancement applies for an aggravating role in the offense, and the parties do not agree to a two-level enhancement for possession of a firearm? Do you understand that neither the probation officer nor the court is bound by any of those agreements?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that I'm not bound by the guideline range?
>
> THE DEFENDANT: I understand.

(Id., p. 22.) The record, therefore, reveals there was no agreement by the United States to request a downward departure pursuant to U.S.S.G. § 5K1.1 and Movant was well aware that sentencing was within the sole discretion of the District Court. Additionally, the District Court granted Movant a downward variance well below the advisory Guideline range despite the fact that the United States did not request a downward departure pursuant to U.S.S.G. § 5K1.1. Finally, to the extent Movant argues that the District Court should have advised him of negative effects of being known as a "snitch" or "cooperator" within the prison, such does not constitute a constitutional violation. Movant is merely expressing his dissatisfaction with his reputation among the prison population, which is insufficient for *habeas* relief. Based upon the foregoing, the undersigned respectfully recommends that Movant's above *habeas* claim be denied.

**3.**    **<u>Ineffective Assistance of Counsel:</u>**

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. <u>Id.</u> The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. <u>Strickland</u>, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

18

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

     **A.    Counsel's failure to appeal.**

In his Motion, Movant claims that he "made a decision to appeal his case but counsel did not even file a simple Notice of Appeal." (Civil Action No. 2:19-00651, Document No. 193, p. 6.) Movant alleges that "[u]nhappy with his sentence, the [Movant] instructed counsel to file a Notice of Appeal . . . He did not." (Id., p. 4.) Movant argues that his "right to an appeal was lost because of counsel's deficient performance." (Id.)

In his Affidavit, Attorney Collias states that Movant never instructed him to file an appeal nor was he aware that Movant was dissatisfied with his sentence. (Id., Document No. 202, pp. 3 – 4.) Specifically, Attorney Collias explains as follows:

> 14.    The allegations contained in paragraph 11 of the petition on page 3 are false. At no time did the petitioner ever instruct, direct or ask the undersigned to file a notice of appeal. Accordingly, the understand never denied the request for the defendant to file a notice of appeal.

> ***

> 18.    With regard to the allegations in paragraph 11 on page 4 of the petition the undersigned was not aware the petitioner was unhappy with his sentence. In fact, the petitioner's sentencing guidelines at sentencing were determined to be 360 months to life and the defendant was only sentenced to 216 months. Furthermore, the petitioner at no time instructed counsel to file a notice of appeal.

(Id.)

In Response, the United States argues that Movant's ineffective assistance of counsel claim as to a potential appeal is meritless. (Id., Document No. 228, pp. 6 - 7.) The United States first notes that Attorney Collias states in his Affidavit that Movant never instructed or requested him to file a notice of appeal. (Id., p. 7.) The United States argues that because Movant never instructed Attorney Collias to file a notice of appeal or communicate that he believed he had legitimate issues to pursue on appeal, Movant's above claim is without merit. (Id.)

In Reply, Movant notes that he "has stated he did instruct counsel to file an appeal and

20

counsel says it's not true." (Id., Document No. 236, p. 6.) Movant then questions, "[w]ho do you believe." (Id.) Movant then claims that "counsel's performance and/or failure to perform, should be a good indication of whether counsel has a deficient performance to which he/she would like to hide as a reason for not admitting his failure to properly file an appeal." (Id.) Movant concludes that "[t]he record should sufficiently support the counsel's performance was damaging and prejudicial - - a good reason to ignore an appeal to which would reveal his culpability and open him up to malpractice claims." (Id.)

The United States Supreme Court established a framework for analyzing claims of ineffective assistance of counsel in taking criminal cases on appeal in Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L.Ed.2d 985 (2000). The Supreme Court stated as follows in Roe v. Flores-Ortega, 528 U.S. at 480, 120 S.Ct. at 1036 (Citation omitted):

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

The Fourth Circuit stated the Roe v. Flores-Ortega analytical framework as follows in United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000):

> An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective. * * * When a client does not specifically instruct counsel to

21

appeal, however, whether counsel has been ineffective by failing to appeal depends upon 'whether counsel in fact consulted with the defendant about an appeal.' * * * in this context 'consult' 'convey[s] a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.' * * * If counsel has not consulted with his client, the court must then ask whether the failure to consult itself constitutes deficient performance. * * * The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe 'either (1) that a reasonable defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.' * * * Although the <u>Roe</u> Court declined to adopt a per se rule that defense counsel who fails to consult with the defendant concerning an appeal is ineffective, the Court did state, 'We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.' * * *

<u>Id.</u>(citations omitted). It is well established that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success" or that the defendant accepted a plea agreement containing an appeal waiver provision. <u>United States v. Peake</u>, 992 F.2d 39, 42 (4th Cir. 1993)(failing to file a requested appeal is *per se* ineffective assistance of counsel and a movant does not have to show prejudice in order to obtain relief); <u>United States v. Poindexter</u>, 492 F.3d 263, 271-73 (4th Cir. 2007)("[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests.") . The United States Supreme Court has clarified that the presumption of prejudice recognized in <u>Roe v. Flore-Ortega</u> applies regardless of whether a defendant has signed an appeal waiver. <u>Garza v. Idaho</u>, ___ U.S. ___, 139 S.Ct. 739, 749-50 (2019)("[W]here, as here, an attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying

22

claims.'"); also see United States v. Glover, 363 Fed.Appx. 989, 990-91; Poindexter, 492 F.3d at 271-73.

A court must hold an evidentiary hearing on a Section 2255 Motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Generally, whether to hold an evidentiary hearing is left to the sound discretion of the district court. Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970). When a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary to resolve the issue, an evidentiary hearing is required. See Witherspoon, 231 F.3d 923, 925-27 (4th Cir. 2000); also see Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970). There, however, "is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances." Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007)("Choosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events."); also see United States v. Perez, 393 F.3d 457, 464 (4th Cir. 2004)(a court may discount "unsupported, conclusory statements" in an affidavit). The Fourth Circuit has explained that although a district court has before it conflicting affidavits, no evidentiary hearing is required where such would add nothing to the proceedings. United States v. Barsanti, 943 F.2d 428, 440 (4th Cir. 1991); also see United States v. Santana, 263 Fed.Appx. 334, 335 (4th Cir. 2008)("[I]t is not per se error for a district court to make credibility determinations on the basis of conflicting affidavits . . ."). "Holding an evidentiary hearing in those cases merely for the sake of holding an evidentiary hearing would squander scarce judicial

resources that may be better utilized elsewhere." Dryer v. United States, 2016 WL 1019438, * 6 (S.D.W.Va. Feb. 19, 2016).

Based upon a review of the entire record and Attorney Collias' Affidavit, the undersigned finds that the above case is one where an evidentiary hearing is not required. There is no indication that an evidentiary hearing would add anything to the proceedings and such would be held "merely for the sake of holding an evidentiary hearing. The undersigned notes that the claims contained in Movant's Section 2255 Motion and Reply addressing the foregoing issue are unsworn, while Attorney Collias filed a sworn Affidavit addressing such. (See Civil No. 2:19-00651, Document No. 193, pp. 4 and 6, Document No. 202, pp. 3 - 4, and Document No. 228, pp. 6 - 7.) Additionally, Movant claims addressing the foregoing issue are vague and conclusory. (See Id., Document No. 193, pp. 4 and 6, and Document No. 228, pp. 6 - 7.) Besides Movant's unsworn, self-serving statement that he instructed Attorney Collias to file an appeal, Movant offers no details concerning the time or place of where such occurred. Movant merely states as follows: "Unhappy with his sentence, the [Movant] instructed counsel to file a Notice of Appeal." (Civil No. 2:19-00651, Document No. 193, p. 4.) In his Affidavit, Attorney Collias states that he "was not aware the [Movant] was unhappy with his sentence" and Movant "at no time instructed counsel to file a notice of appeal." (Id., Document No. 202, p. 4.) The undersigned finds Movant's unsworn and self-serving statements to be less credible than the sworn statements provided by Attorney Collias.[5] Movant further fails to identify a "nonfrivolous ground" for appeal or why any "rational defendant" in his position would have wanted to file an appeal. Although Movant states that he

---

[5] Movant was provided notice pursuant to *Roseboro v. Garrison*, 518 F.2d 309 (4th 1975) and advised of his right to "set out either in his own Affidavit or sworn statement or the Affidavits or sworn statements of other witnesses" facts supporting his claims. (Civil Action No. 2:19-00651, Document No. 229.)

24

wished to appeal because he was "unhappy" with his sentence, the record is void of any evidence to support such a claim. Under the Plea Agreement, Movant waived his right to appeal his conviction and sentence of imprisonment as long as his sentence was "below or within the Sentencing Guideline range corresponding to offense level 36." (Criminal Action No. 2:18-00004, Document No. 102, p. 6.) The Guideline range for Offense Level 36 was 235 – 293 months of imprisonment. Although the District Court determined that Movant's Total Offense Level was 40, the District Court sentenced well below the advisory Guideline range by imposing a sentence of imprisonment of 216 months. Movant's sentence of 216 months of imprisonment was clearly below the Guideline range for Offense Level 36 (235 – 293 months of imprisonment). Although the undersigned appreciates the fact that no one would be "happy" about being sentenced to any term of imprisonment, the record does not support a finding that a rational defendant in Movant's position would have been "unhappy" with the below Guideline sentence imposed by the District Court. The record confirms that Movant was advised by the District Court at the Sentencing Hearing of his right to appeal and the timeline for filing any such appeal. (Criminal Action No. 2:18-00004, Document No. 224, p. 49.) Although Movant vaguely asserts that he instructed Attorney Collias to file a notice of appeal, the record is void of any allegation or indication that Movant ever contacted the Court or Attorney Collias inquiring of the status of his appeal. Any rational defendant that directed counsel to file a notice of appeal would certainly inquire of the status of such after a period of time. Accordingly, the undersigned finds the record does not support Movant's self-serving claim that he instructed Attorney Collias to file a notice of appeal. Attorney Collias, therefore, did not act unreasonably in failing to file such. Based upon the foregoing, the

undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

###    B.    Counsel's alleged failure to investigate an entrapment defense.

In his Amended Motion, Movant claims that Attorney Collias failed to investigate an entrapment defense. (Civil Action No. 2:19-00651, Document No. 216, pp. 10 - 16.) Citing <u>United States v. Beutler</u>, 2011 WL 3321374 (W.D.N.Y. Aug. 2, 2011), which Movant refers to as "<u>Chosen Few</u>," Movant argues that he was similarly induced by the FBI to commit the underlying offense. (<u>Id.</u>, pp. 7, 10 – 16.) Movant argues that the confidential informant and the FBI were the true organizers of the "drug ring" and Movant was entrapped into participating. (<u>Id.</u>) Movant alleges that in September 2017, a confidential informant gave Movant "56 grams of ice for personal use" and $2,000 "for bills." (<u>Id.</u>, p. 10.) Movant states that he was a known addict and he immediately "consumed the drugs and went into debt to the confidential informant and the FBI. (<u>Id.</u>) Movant claims that due to his debt, the confidential informant pressured Movant to obtain drugs for the confidential informant "through [Movant's] contacts he had from his hometown in California." (<u>Id.</u>) Movant alleges that he informed Attorney Collias of the foregoing, but Attorney Collias refused to investigate an entrapment defense. (<u>Id.</u>, pp. 11 – 12.) Movant further complains that Attorney Collias failed to object to the four point Guideline enhancement based upon Movant being a leader or organizer. (<u>Id.</u>, pp. 12 – 13.) Movant contends that Attorney Collias should have argued that the confidential informant and FBI were the organizer/supervisor of the "drug ring," and Movant was entrapped and "enslaved" by the Government to commit the underlying offense. (<u>Id.</u>, pp. 15 – 16.)

In his Affidavit, Attorney Collias states that "he never refused to investigate" an

entrapment defense nor does he "have any actual recollection of the [Movant] ever even raising the matter." (Id., Document No. 217, p. 2.) Attorney Collias further argues that Movant's claims concerning the alleged entrapment by the confidential informant and FBI would not have served as a basis for a dismissal of the case. (Id.) Finally, Attorney Collias asserts that he "did in fact object to the 4-point leadership role enhancement in this case and that objection as sustained by the Court." (Id.)

In Response, the United States argues that Movant's claim that counsel was ineffective in refusing [Movant's] request to investigate an entrapment defense is without merit. (Id., Document No. 228, pp. 8 - 13.) The United States first notes that in his Affidavit, Attorney Collias denies that Movant ever raised an issue of entrapment. (Id.) Next, the United States argues that "the government's use of a confidential informant did not constitute entrapment." (Id.) The United States explains "[a]n entrapment defense has two elements, the first being the government's inducement of the crime and the second being the defendant's lack of predisposition to engage in the criminal conduct." (Id.) The United States argues that the government's act of initiating a drug transaction and soliciting a defendant to broker a drug deal is insufficient to show inducement. (Id.) The United States further contends that "in September 2017, [Movant] had clearly already demonstrated a willingness and predisposition to drug distribution, as the stipulation of facts and plea colloquy confirmed that he had been engaged with the conspiracy to deliver methamphetamine since April 2017." (Id.) The United States argues that Movant's reliance upon Chosen Few and Koschtshuk is misplaced. (Id.) The United States notes that both are out-of-circuit authority that are non-binding on this Court and the case facts are significantly different from the facts surrounding Movant's case. (Id.) Finally, the United States asserts that Attorney Collias "did

27

argue that the [Movant] should have a three-level enhancement rather than a four-level enhancement for his role in the offense, and the Court sustained Mr. Collias' objection." (Id.)

In Reply, Movant claims that Attorney Collias' "deficient representation" denied Movant "the ability to move for an immediate dismissal due to entrapment." (Id., Document No. 236, p. 3.) Movant continues to argue that an informant "cannot use a person's drug addiction to put someone in debt, then pressure the indebted drug addict to get drugs to which the informant will report for credit." (Id., pp. 7 – 8.) Movant argues that his admissions during the Plea Hearing were the result of Movant being "under the falsehood that entrapment was legal procedure to which the Government is allowed to do." (Id., p. 8.) Thus, Movant argues that Attorney Collias was ineffective in failing to assert an entrapment defense based upon the "use of a drug debt to entrap a drug addict." (Id., p. 9.)

"To prevail on an [ineffective assistance of counsel] claim based on a failure to investigate, a petitioner must specify 'what an adequate investigation would have revealed." Walton v. Ballard, 2018 WL 1582727, * 7 (S.D.W. Va. March 20, 2018)(quoting Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)). Movant argues that an adequate investigation by Attorney Collias would have revealed a viable entrapment defense.[6] The affirmative defense of entrapment involves "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews v. United States, 485 U.S. 58,

---

[6] Although Movant claims that Attorney Collias refused to investigate entrapment as a defense, Movant acknowledged during the Plea Hearing he was completely satisfied with his counsel's representation. (Criminal Action No. 2:18-0004, Document No. 223, p. 4.) As stated above, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221 - 222.

62 -63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). The defendant has the initial burden of producing more than a scintilla of evidence that the government induced him to commit the crime. United States v. Hsu, 364 F.3d 192, 198 (4th Cir. 2004). Inducement "involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993). The "excessive behavior" required by the government must be "so inductive to a reasonably firm person as likely to displace *mens rea*." United States v. DeVore, 423 F.2d 1069, 1072 (4th Cir. 1970). It is well established that inducement "requires more than mere solicitation by the government." Hsu, 364 at 198. Some forms of "persuasion or appeals to sympathy" can constitute inducement. United States v. Squillacote, 221 F.3d 542, 569 (4th Cir. 2000). Inducement has been found where the government (1) made multiple requests "to overcome, first, petitioner's refusal, then his evasiveness, and then his hesitancy in order to achieve capitulation" and (2) persisted in "baiting" a defendant after the defendant "repeatedly ignored the agent's invitations to wrongdoing." See Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); United States v. Sligh, 142 F.3d 762, 763 (4th Cir. 1998). Thus, the persuasion or appeals must be extreme to constitute inducement. The following are examples of extreme pleas that have been determined to constitute inducement:

> [W]here an undercover agent pleaded that "unless his 'blood brother' would help him land a cocaine deal he would be killed," *United States v. McLernon*, 746 F.2d 1098, 1113 (6th Cir. 1984); where a government informant was in a narcotics addiction treatment program and preyed on the defendant's sympathy by repeatedly requesting narcotics because he was suffering from withdrawal, *Sherman*, 356 U.S. at 373, 78 S.Ct. 819; and where an undercover informant convinced the defendant to cooperate based on "a tale of financial woes, the need to support a new spouse, and terminal cancer, all the while knowing that [defendant's] sister recently had died of cancer," *United States v. Nations*, 764 F.2d 1073, 1080 (5th Cir. 1985).

United States v. Wright, 333 Fed.Appx. 772, 777 (4th Cir. 2009). Mild persuasion, however, is insufficient. Id. at 776(finding a confidential informant's offer of "payment for arranging a deal is normal in the context of a drug buy and is not generally sufficient to demonstrate inducement"); also see Squillacote, 221 F.3d at 569(finding that mild persuasion is not inducement); Hsu, 364 F.3d at 202(finding that the mention of a "reward" was "mere banter" amounting to no more than mild persuasion); Daniel, 3 F.3d at 778-79(finding that the government's reminder "that there was money to be made and promise to avoid arousing the attention of authorities" to be only mild persuasion).

If the defendant satisfies the initial burden of presenting evidence that the government induced him to commit the crime, the government has the burden of proving that the defendant was disposed to commit the criminal act prior to first being approached by government agents. United States v. Jones, 976 F.2d 176, 179 (4th Cir. 1992). Predisposition is the "defendant's statement of mind before government agents make any suggestion that he shall commit a crime." United States v. Osborne, 935 F.2d 32, 37 (4th Cir. 1991). The predisposition inquiry should focus on "whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." Matthews, 485 U.S. at 63, 108 S.Ct. 883. "[T]he issue is precisely whether the accused, at the time the government inducement, had a propensity to commit crimes of the nature charged - - that is, whether he was predisposed to do so." United States v. McLaurin, 764 F.3d 372, 381 (4th Cir. 2014(citing United States v. Burkley, 591 F.2d 903, 921 (D.C. Cir. 1978)). "The government may meet its burden by demonstrating the defendant's ready response to the inducement offered." Jones, 976 F.2d at 179 (citation omitted); also see United States v. Harrison, 37 F.3d 133, 136 (4th Cir. 1994)("[W]hen government agents

merely offer an opportunity to commit the crime and the defendant promptly avails himself of that opportunity, an entrapment instruction is not warranted.") Additionally, "[p]redisposition is not limited only to crimes 'specifically contemplate[d]' by the defendant prior to government suggestion, but encompasses decisions to commit the crime that is 'the product of his own preference and not the product of government persuasion.'" United States v. Ramos, 462 F.3d 329, 334-35 (4th Cir. 2006)(citing Hsu, 364 F.3d at 198).

The undersigned first finds that Movant's reliance upon Beutler is not persuasive. Beutler is an out-of-circuit decision that is not binding upon this Court. In the instant case, Movant alleges that he was a known drug addict and the confidential informant gave him drugs with the intent to "enslave" Movant to commit the underlying offense as repayment of that debt. Although some forms of "persuasion or appeals to sympathy" can constitute inducement, the alleged conduct of the confidential informant offering Movant drugs was not sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party. See United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)("It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play.") Specifically, Movant allegations concerning the confidential informant was mere solicitation and would not "persuade an otherwise innocent person to commit a crime." There is no allegation or indication that the confidential informant made multiple offers or engaged in persistent "baiting" after repeated refusals by Movant to participate in the criminal activity. The confidential informant merely offered Movant the opportunity to engage in criminal conduct Movant was ready and willing to participate in. See Harrison, 37 F.3d at 136("[W]hen government agents merely offer an opportunity to commit the crime and the defendant promptly avails himself

31

of that opportunity, an entrapment instruction is not warranted.") Accordingly, the undersigned finds no evidence supporting a finding that Movant was induced by the government to commit the underlying offense.

Even assuming Movant was induced by the government, the undersigned finds that Movant was predisposed to violate the law. Movant alleges that the government inducement occurred in September 2017 when the confidential informant offered Movant drugs in efforts to place Movant in "debt" and to "enslave" Movant into going to his hometown in California to obtain meth and ice for the confidential informant. The record, however, reveals that Movant admitted to conspiring to distribute methamphetamine between April 2017 and October 16, 2017. (Criminal Action No. 2:18-0004, Document No. 102, p. 10 and Document No. 223, pp. 9 – 10.) Specifically, Movant stipulated to the following:

> Between April 2017, and October 16, 2017, I conspired with Brittany Cross, Richard Rach III, Anthony Cruz, Steven Jones, Chaz Roy to distribute more than 500 grams of methamphetamine throughout the Kanawha County area of West Virginia. At various times during that span, I, with the assistance of some or all of the above-listed people arranged the shipment of pound quantity packages of methamphetamine from California to West Virginia for distribution.

(Id., Document No. 102, p. 10.) During the Plea Hearing, Movant acknowledged that he initialed each page and signed the last page of the Plea Agreement and that he understood and signed the Stipulation of Facts. (Id., Document No. 223, pp. 9 – 10.) Thus, the record demonstrates that in September 2017, Petitioner had a willingness and predisposition to drug distribution as Movant admitted he had been engaged in the conspiracy to deliver methamphetamine since April 2017. See United States v. Chaparro, 335 Fed.Appx. 352, (4th Cir. 2009)(Finding an entrapment jury instruction was not warranted where any inducement by the government's confidential informant was mere solicitation and the informant and undercover agent merely offered defendant the

opportunity to engage in criminal conduct he was predisposed to engage in); Jackson v. Ray, 390 F.3d 1254, 1266 (10th Cir. 2004)(finding defendant was predisposed to commit the offense of distribution of drugs where there was testimony that the defendant was a drug addict, defendant wanted to secure drugs for his personal use, and defendant was motivated to sell drugs for the prospected of getting free drugs in return); United States v. Hollingsworth, 27 F.3d 1196, 1200 (7th Cir. 1994)(Explaining that predisposition is "not a purely mental state," but it "has positional as well as disposition force." As an example, the Court explained that "a public official is in the position to take bribes; a drug addict to deal drugs; a gun dealer to engage in illegal gun sales. For these and other traditional targets of stings all that must be shown to establish predisposition, and thus defeat the defense of entrapment, is willingness to violate the law without extraordinary inducements.) At the time of the government's alleged inducement, Movant clearly was not an "unwary innocent" but was "an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." See Matthews, 485 U.S. at 63, 108 S.Ct. 883. Based upon the foregoing, the undersigned finds that the government's use of the confidential informant did not constitute entrapment and Attorney Collias did not act ineffectively in his alleged failure to investigate or assert such a defense. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999)(stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); Moore v. United States, 934 F.Supp. 724, 731 (E.D.Va. 1996)(holding that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument").

　　　Next, the undersigned finds that Movant's claim that Attorney Collias was ineffective in

failing to challenge the four-level enhancement for Movant's leadership role to be without merit. The record reveals that Attorney Collias did object to the four-level enhancement based on Movant being classified as an organizer and leader of the criminal activity. (Criminal Action No. 2:18-0004, Document No. 175, p. 67 and Document No. 224, pp. 28 - 29.) Attorney Collias successfully argued that Movant was merely a manager or supervisor, but not an organizer or leader. (Id.) Attorney Collias explained that although Movant provided or distributed drugs to a number of individuals, Movant was not an organizer or leader of a drug distributing organization. (Id.) The District Court, therefore, only imposed a 3-level enhancement based upon Movant's role in the offense. (Id., Document No. 167, p. 1 and Document No. 224, p. 31.) Thus, Movant cannot establish either prong of Strickland as to the foregoing claim. The undersigned, therefore, respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

## C.    Counsel's alleged failure to object to the two-point "drug house" enhancement pursuant to U.S.S.G. § 2D1.1(b)(2).

In his Amended Motion, Movant claims that Attorney Collias failed to argue against to the two-point "drug house" enhancement pursuant to U.S.S.G. § 2D1.1(b)(2) and present Movant's "meritorious claim." (Civil Action No. 2:19-00651, Document No. 216, pp. 25 - 29.) Movant complains that the District Court abused its "discretion by allowing a two point increase/enhancement pursuant to U.S.S.G. § 2D1.1(b)(2) when no factors or proof supported the PSR report." (Id., p. 25.) Movant contends that the District Court "punished the [Movant] for maintaining a premise for drugs that the [Movant] and his family lived in prior to the 7 month crime spree alleged to have happened." (Id.) Movant claims that the District Court "failed to allow evidence that was exculpatory" and "then punished [Movant] for running a drug house without proof." (Id.) Movant argues that this enhancement was based upon hearsay evidence and Attorney

34

Collias should have cross-examined the co-defendants concerning their statements for the Presentence Report. (<u>Id.</u>, pp. 26 – 29.) Movant asserts that Attorney Collias should have requested an evidentiary hearing. (<u>Id.</u>)

In his Affidavit, Attorney Collias denies that "he ever failed to present any meritorious claim on behalf of the defendant." (<u>Id.</u>, Document No. 217, p. 3.) Attorney Collias states that he saw no need to cross-examine the co-defendants regarding their statements for the Presentence Report. (<u>Id.</u>) Attorney Collias further denies that he was ineffective in failing to request an evidentiary hearing. (<u>Id.</u>)

In Response, the United States argues that Movant's above claim of ineffective assistance of counsel is without merit. (<u>Id.</u>, Document No. 228, pp. 13 - 14.) The United States notes that Attorney Collias briefed and argued against the application of the two-point "drug house" enhancement as applied in the Presentence Report, but the District Court overruled the objection. (<u>Id.</u>, p. 13.) The United States contends that Movant "does not explain how a cross-examination of his co-defendants would advance his argument anymore beyond what Mr. Collias already argued to the Court." (<u>Id.</u>) Thus, the United States argues that Movant's above claim of ineffective assistance of counsel should be denied. (<u>Id.</u>)

In Reply, Movant continues to argue that an evidentiary hearing was necessary to expand the record to include the cross-examination of co-defendants "to allow the Honorable Judge to make a fully informed decision based on facts and not one sided conjecture and vague conclusory allegations." (<u>Id.</u>, Document No. 236, pp. 11 – 12.) Movant alleges that the failure of trial counsel to request an evidentiary hearing "allowed the record to remain bare of easily found facts that supported that [Movant] did not have a drug house." (<u>Id.</u>, p. 4.)

Although Movant argues that Attorney Collias was ineffective in failing to present Movant's "meritorious claim" and requesting an evidentiary hearing, Movant fails to identify his "meritorious claim" or explain what an "evidentiary hearing" would have revealed. A movant must make specific allegations establishing reason to believe that, if the facts are fully developed, he is entitled to relief. <u>United States v. Roane</u>, 378 F.3d 382, 403 (4th Cir. 2004). Movant, however, fails to explain how counsel acted ineffectively or how Movant was prejudiced by such conduct. The Fourth Circuit has recognized that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." <u>United States v. Dyess</u>, 730 F.3d 354, 359 (4th Cir. 2013)(citing <u>United States v. Thomas</u>, 221 F.3d 430, 437 (3rd Cir. 2000)); <u>also see</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1997)(the "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"); <u>United States v. McClellan</u>, 2017 WL 2822315 (3rd Cir. Jan. 3, 2017)(finding petitioner's conclusory allegations of the ineffective assistance of counsel were insufficient); <u>United States v. Faria</u>, 268 Fed.Appx. 730 (10th Cir. 2008)(conclusory allegations of ineffective assistance of counsel were insufficient to warrant habeas relief); <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995)(finding habeas relief was unwarranted based on "conclusory allegations which are not supported by a statement of specific facts"); <u>Andiarena v. United States</u>, 967 F.2d 715, 719 (1st Cir. 1992)(finding summary dismissal appropriate where petitioner's claim was "wholly conclusory").

Contrary to Movant's argument, the record reveals that Attorney Collias did object to the two-point "drug house" enhancement in the Presentence Report and at the Sentencing Hearing. Concerning the Presentence Report, Attorney Collias objected to the probation officer's finding

that (1) Movant used his house in Kentucky for manufacturing, storing, or distributing illegal drugs or for any other unlawful purpose; (2) Movant "had ordered or directed anyone to deliver any illegal drugs to any stash house in Kentucky;" (3) Movant "determined that it was no longer safe to use the Kentucky stash house;" (4) Movant's "former girlfriend's father-in-law was supposed to drop methamphetamine at [Movant's] stash house in Kentucky;" (5) All references to Movant's residence in Kentucky as being a "stash house;" and (6) Movant maintained the Gordon Drive residence as a premises for the manufacture, distribution, or storage of a controlled substance because such was "his principal residence, wherein he and his family resided." (Criminal Action No. 2:18-0004, Document No. 175, pp. 65 – 66.) Further, Attorney Collias filed a Sentencing Memorandum on behalf of Movant arguing that the Gordon Drive residence was Movant primary residence where he resided with his girlfriend, daughter, Janice Roberts, and Janice's infant child. (Id., Document No. 138.) Attorney Collias noted that even though "other members of the conspiracy also from time to time also resided there, the primary and principal use of this residence was as a place for the [Movant] and his family to live." (Id.) Attorney Collias claimed that the use of the residence in relation to drug trafficking was clearly secondary. (Id.) Attorney Collias argued that although a premises can have more than one principal purpose, the principal purpose of the Gordon Drive premises was a residence because it was clear that Movant resided there before he was involved in drug trafficking or any other criminal activity. (Id.) Attorney Collias asserted that "[i]f the 'maintaining a premise' enhancement applies to the [Movant] on the facts of this case, then essentially, it would apply to any drug dealer who is not homeless and living out of his car." (Id.) Furthermore, Attorney Collias noted that "in the original PSR, the probation officer did not attribute this Gordon Drive residence as being a premises that was being maintained for this

purpose and that the probation officer only made that allegation after she saw defense counsel's objection to her position that the Kentucky residence was a stash house." (Id.) Finally, Attorney Collias continued to assert these objections and arguments during the Sentencing Hearing. (Criminal Action No. 2:18-00004, Document No. 224, pp. 26 - 28.) The District Court, however, overruled Attorney Collias' objections and determined Movant had a Total Offense Level of 40, a Criminal History Category of Three, and an advisory Guideline range of 360 months to Life imprisonment. (Id., pp. 34 - 35.) Attorney Collias then presented his argument supporting a downward variance and Movant made his sentencing statement. (Id., pp. 36 – 41.) The District Court apparently found such to be compelling. (Id., pp. 36 – 41.) The District Court imposed a sentence of imprisonment of 216 months, which was 144 months below the lowest of the advisory Guideline range. (Id., pp. 41 – 42.) Therefore, the undersigned cannot find that Attorney Collias' representation concerning his opposition to the "drug house" enhancement fell below an objective standard of reasonableness. Even assuming Attorney Collias' representation was deficient, the undersigned cannot find that Movant was prejudiced. Without the "drug house" enhancement, Movant's Total Offense Level would have been 38 thereby subjecting Movant to an advisory Guideline range of 292 to 365 months imprisonment. Movant's sentence of 216 months imprisonment was clearly well below the advisory Guideline range for a Total Offense Level of 38. Accordingly, the undersigned finds that Movant cannot establish either prong of the Strickland standard concerning Attorney Collias' alleged failure to properly challenge the "drug house" enhancement.

   **D.    Counsel's alleged failure to object to the drug weight calculation.**

In his Amended Motion, Movant contends that Attorney Collias was ineffective in his

38

failure to challenge the drug weight calculation. (Civil Action No. 2:19-00651, Document No. 216, pp. 30 - 34.) Movant claims that Attorney Collias "failed to move for a hearing to extract the facts around the foundation of the PSR's false report, then confront the inaccurate PSR weights then being used by the Honorable Judge." (Id., p. 30.) Movant asserts that the Presentence Report "presented a fabricated weight that was calculated by hearsay and statements." (Id., p. 31.) Movant explains that Attorney Collias should have "asked for a hearing to cross examine co-defendants Jones and Rach to get the true weights of the 420 grams." (Id., p. 33.) Movant states that the District Court improperly increased the drugs weight concerning October 13, 2017, from 420 grams to 907.2 grams based on statements by co-defendants. (Id., p. 30.) Movant argues that he should be resentenced "with a hearing to get final and correct drug weights." (Id., p. 34.)

In his Affidavit, Attorney Collias denies that "he never failed to present any meritorious claim on behalf of the defendant." (Id., Document No. 217, p. 3.) Attorney Collias states that he made proper objections to the drug weight calculation as contained in the Presentence Report. (Id.) Attorney Collias further states that he saw no need to cross-examine the co-defendants. (Id.)

In Response, the United States argues that Attorney Collias was not ineffective regarding the drug weight calculations and his failure to cross-examine co-defendants. (Id., Document No. 228, pp. 15 - 16.) The United States notes that Movant and United States had stipulated to the drug weights and calculated the Base Offense Level at 34. (Id., p. 15.) In the Presentence Report, however, the probation officer calculated more drug weight resulting in a higher Base Offense Level of 36. (Id.) The United States states that Attorney Collias objected to some of the drug weight that the co-defendants attributed to Movant in the Presentence Report. (Id.) The United States notes that Attorney Collias continued to assert such objections and present arguments favorable to

Movant during the Sentencing Hearing. (Id.) The United States contends that Movant "offers no evidence or information beyond that already contained in the record, nor does he explain how cross-examination of his co-defendants would have advanced his argument anymore beyond what Mr. Collias had already argued to the Court." (Id.)

In Reply, Movant continues to argue that Attorney Collias "failed to protect the [Movant's] rights to be sentenced to proper weights of drugs that were central to the amount of prison time he would get." (Id., Document No. 236, pp. 12 – 13.) Movant concludes that Attorney Collias' "decision to not correct the record and cross-examine the co-defendants caused extra years of imprisonment." (Id., p. 13.) Movant argues that an evidentiary hearing should have been conducted to establish the "true weight." (Id.)

In the Plea Agreement, the parties stipulated that Movant's Base Offense Level would be 34. (Criminal Action No. 2:18-0004, Document No. 102, p. 5.) In the Presentence Report, however, the probation officer determined that Movant's Base Offense Level would be 36 based on the drug weight attributed to Movant. (Id., Document No. 175, pp. 41 – 43, 45.) Contrary to Movant's argument, the record reveals that Attorney Collias did challenge the drug weight attributed to Movant in the Presentence Report and at the Sentencing Hearing. Concerning the Presentence Report, Attorney Collias objected to the probation officer's finding that attributed quantities of methamphetamine as ice to Movant for the dates of September 19, 2017, September 23, 2017, October 4, 2017, and October 13, 2017. (Criminal Action No. 2:18-0004, Document No. 175, pp. 63 – 64.) As to drug weight attributed for October 13, 2017, Attorney Collias specifically argued that Movant disputed and denied this two pounds of ice and denied anything contained in the Presentence Report that factually supported such a conclusion. (Id., p. 64.) Attorney Collias

40

further argued that no other co-defendant received a Base Offense Level higher than 34. (Id., p. 63.) Attorney Collias asserted "[i]t is not legally possible that multiple defendants all whom where central players in the conspiracy can have different base offense levels." (Id.) Finally, Attorney Collias continued to assert these objections and arguments during the Sentencing Hearing. (Criminal Action No. 2:18-00004, Document No. 224, pp. 4 – 10, 14, 16, 21 - 26.) The District Court, however, overruled Attorney Collias' objections and determined Movant had a Base Offense Level of 36. (Id.) Although Attorney Collias was unsuccessful in his challenge to the attributed drug weight, the undersigned cannot find that Attorney Collias' representation fell below an objective standard of reasonableness. Furthermore, Movant cannot establish that he was prejudiced even assuming Attorney Collias representation was deficient. As explained above, Attorney Collias presented a compelling argument supporting a downward variance. (Criminal Action No. 2:18-00004, Document No. 224, pp. 36 – 38.) The District Court granted Movant a downward variance imposing a sentence of imprisonment of 216 months, which was 144 months below the lowest end of the advisory Guideline range. (Id., pp. 36 – 42.) Assuming Attorney Collias would have been successful in his challenge to the drug weight resulting in Movant receiving a Base Offense Level of 34 instead of 36, Movant's Total Offense Level would have been 38 thereby subjecting Movant to an advisory Guideline range of 292 to 365 months imprisonment.[7] Movant's sentence of 216 month imprisonment was clearly well below the advisory Guideline range for a Total Offense Level of 38. Accordingly, the undersigned cannot

---

[7] Even assuming Attorney Collias could have successfully challenged the drug weight resulting in a Base Offense Level of 34 and successfully challenged the two-level "drug house" enhancement, Movant's Total Offense Level would have been 36 thereby subjecting Movant to an advisory Guideline range of 235 to 293 months imprisonment. Movant's sentence of 216 month imprisonment was clearly well below the advisory Guideline range for a Total Offense Level of 36.

find that Movant was prejudiced.

To the extent Movant focuses upon Attorney Collias' failure to seek an evidentiary hearing and cross-examination of co-defendants Rach and Jones concerning the drug weight attributed for October 13, 2017, the undersigned finds such did not constitute ineffective assistance of counsel. "[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and on to which we must afford enormous deference." United States v. Terry, 366 F.3d 312, 317-18 (4th Cir. 2004)(counsel's decision not to call certain witnesses was reasonable based upon his professional judgment); also see Strickland, 466 U.S. at 690, 104 S.Ct. at 2065("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); United States v. Champman, 593 F.3d 365, 369 (4th Cir. 2010)(even if defendant disagrees, "which witnesses to call is a classic tactical decision left to counsel"); United States v. Best, 219 F.3d 192, 201 (2nd Cir. 2000)(the failure to call witnesses, even those who might offer mitigating evidence, is not ordinarily viewed as a lapse in professional judgment); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977)(the failure to call witnesses is a tactical decision that generally does not amount to ineffective assistance of counsel). It is well recognized that tactical decisions, such as which witness to call, are "virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009)(quotation marks omitted); United States v. Orr, 636 F.3d 944, 955 (8th Cir. 2011)("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengable decision of trial strategy."); Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010)("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Boyle

42

v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). The undersigned cannot find that Attorney Collias acted unreasonably in failing to secure the testimony of co-defendants Rach and Jones. During the Sentencing Hearing, the District Court acknowledged Attorney Collias' argument that Movant disputed co-defendants Rach and Jones' statements concerning the October 13, 2017, drug weight to the probation officer. (Criminal Action No. 2:18-00004, Document No. 224, pp. 23 – 25.) The District Court, however, noted that there had been no evidence introduced contradicting Mr. Rach and Jones' statements and that the Court was not going to "overrule information from Mr. Rach and Mr. Jones that was provided to the probation officer as evidence based on [Attorney Collias'] argument." (Id., p. 25.) In his Affidavit, Attorney Collias states that he saw no need to cross-examine the co-defendants. (Civil Action No. 2:19-00651, Document No. 217, p. 3.) Although Movant contends that Attorney Collias should have crossed examined co-defendants Rach and Jones, Movant fails to explain what such a cross-examination would have revealed and how it would have favored Movant. (Id., Document No. 216, p. 30.) Movant merely concludes that Attorney Collias should have "asked for a hearing to cross examine the co-defendants Jones and Rach to get the true weights of the 420 grams." (Id.) There is no indication or allegation that co-defendant Rach or Jones, or any other co-defendant, would have modified the statements made to the probation officer concerning the drug weight. Movant fails to identify by name any witness or co-defendant willing to testify in Movant's favor or an affidavit verifying the co-defendant or witness's possible testimony. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)(petitioner must proffer evidence of what the witnesses' testimony would have been and cannot establish ineffective assistance of counsel based on a general claim that additional

witnesses should have been called); <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991)(a defendant who faults counsel for not calling a witness cannot simply state the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance of counsel claim); <u>Slate v. Vargo</u>, 2014 WL 3378627, * 7 (E.D.Va. July 8, 2014)("In federal jurisprudence it is well established that a claim of ineffective assistance predicated on the failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided."); <u>Johnson v. McCall</u>, 2010 WL 936726, * 4 (D.S.C. March 15, 2010)("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.") Even assuming Attorney Collias would have called co-defendants Jones and Rach as witnesses, there is no indication that such testimony would have been favorable to Movant. Movant's self-serving speculation that a cross-examination of these individuals may been favorable will not sustain an ineffective assistance of counsel claim. Thus, the undersigned finds that Movant has failed to establish that Attorney Collias was deficient or that he was prejudiced by the alleged deficiency.

Based upon the foregoing, the undersigned finds that Movant cannot establish either prong of the <u>Strickland</u> standard concerning Attorney Collias' alleged failure to properly challenge the attributed drug weight. The undersigned, therefore, respectfully recommends that the above claim be denied.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Supplement (Document Nos. 193 and 216) and **REMOVE** this matter from the

Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: May 3, 2022.



Omar J. Aboulhosn
United States Magistrate Judge